UNITED STATES DISTRICT

COURT DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| WILLIAM N.,[1] <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | <br><br><br><br><br><br> Case No. 6:22-cv-01231-YY <br><br> OPINION AND ORDER |

YOU, Magistrate Judge.

Plaintiff William N. seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33, and Supplemental Security Income ("SSI") disability benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g).

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of plaintiff's last name.

1 – OPINION AND ORDER

Defendant has filed a responsive brief that includes a motion to remand for further proceedings. Def.'s Br. & Mot. Remand, ECF 16. The motion is granted, and this case is REVERSED and REMANDED for further proceedings consistent with this decision.

**BACKGROUND**

Plaintiff protectively filed for DIB and SSI on August 26, 2015, alleging disability beginning on August 1, 2015. Tr. 177, 179. Plaintiff's applications were initially denied on December 8, 2015, and again upon reconsideration on April 11, 2016. Tr. 89, 104, 691, 704. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on January 24, 2018. Tr. 38-73. At the hearing, plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. *Id.* The ALJ issued a decision on April 27, 2018, finding plaintiff not disabled within the meaning of the Act. Tr. 15-26. On March 1, 2019, the Appeals Council denied plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner and subject to review by this court. Tr. 1-4; 42 U.S.C. § 416.1481.

Plaintiff appealed the denial to this court. *William N. v. Commissioner, Social Security Adm.*, 6:19-cv-00523-HZ. The court found in favor of the plaintiff and remanded the matter for the ALJ to address several legal errors, including (1) the failure to include the limitation of "speeded, fine fingering" in the RFC and the VE's hypothetical, (2) the failure to include the ALJ's own determination in the RFC that plaintiff had moderate limitations in concentration, persistence, or maintaining pace, and (3) the failure to provide a reason for rejecting the lay witness testimony of Courtney Sevey of Oregon Vocational Rehabilitation Services. Tr. 568-69, 571.

In the meantime, plaintiff filed another application for benefits on March 26, 2019, where plaintiff was found disabled as of April 28, 2018. Tr. 576. Left for the ALJ upon remand was the

2 – OPINION AND ORDER

question of whether plaintiff was disabled from the alleged onset date of August 1, 2015, to April 27, 2018. *Id*. A second hearing was held on February 8, 2022. Tr. 510-44. The ALJ issued a decision on April 29, 2022, making it the Commissioner's final decision and subject to review by this court. Tr. 487-502; 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920;

3 – OPINION AND ORDER

*Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of August 1, 2015, through April 27, 2018. Tr. 490. At step two, the ALJ determined plaintiff suffered from the following severe impairments: chronic left hip strain, chronic low back strain, depression, generalized anxiety disorder, attention deficit hyperactivity disorder (ADHD), posttraumatic stress disorder (PTSD), and specific learning disorder (math and written expression). *Id*.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled the listed impairment. Tr. 491. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined plaintiff has the ability to

> Perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can occasionally climb ramps, stairs, ladders, ropes, or scaffolds, and he can no more than frequently balance, stoop, kneel, crouch, and crawl. The claimant must avoid exposure to workplace hazards, and he can understand and carry out simple instructions. The claimant can tolerate no more than occasional contact with the general public, and he requires a work environment with few workplace changes.

Tr. 493.

At step four, the ALJ found plaintiff was unable to perform any past relevant work. Tr. 500. At step five, the ALJ determined that, based on plaintiff's age, education, work experience, and RFC, there were jobs that existed in the national economy that plaintiff could perform, including industrial cleaner and laundry sorter. Tr. 501-02. Thus, the ALJ concluded that plaintiff was not disabled. Tr. 502.

## DISCUSSION

Plaintiff argues the ALJ erred by failing to comply with this court's remand order, by discounting his subjective symptom testimony along with that of lay witnesses, and by failing to include all of his limitations in the RFC. Defendant concedes the ALJ erred by not including all of plaintiff's limitations in the RFC and for improperly rejecting lay witness testimony but argues remand for further proceedings is the appropriate remedy because the record contains conflicts, gaps, and ambiguities that can be remedied upon remand. Def. Br. & Mot. Remand, ECF 16. Defendant also argues that plaintiff's arguments regarding subjective symptom testimony and the assessments of two state agency consulting psychologists are beyond the scope of the remand order. *Id*. Plaintiff counters that his arguments are not beyond the scope because the Appeals Council ordered the ALJ to offer plaintiff "the opportunity for a hearing and [to] address the additional evidence submitted," including plaintiff's testimony from the hearing on remand and the assessments of the two state agency psychologists from 2019 and 2020, which were not part of the ALJ's review in 2018. Pl.'s Reply Br. 4-5, ECF 17.

**I.     Scope of Remand**

Defendant contends that plaintiff's arguments regarding his subjective symptom testimony as well as the assessments of two state agency psychologists are outside the scope of the remand, and that the law of case doctrine forecloses this court's ability to entertain such arguments.

"The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs." *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990) (*citing Lockert v. U.S. Dept. of Labor*, 867 F.2d 513, 518 (9th Cir. 1989). "Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court[.]" *Id.* The doctrine "concerns courts' general practice of refusing to reopen questions

5 – OPINION AND ORDER

previously decided in the same case." *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 601 (9th Cir. 1991). For the doctrine to apply, the issue in question must have been "decided explicitly or by necessary implication in [the] previous disposition." *Milgard*, 902 F.2d at 715.

However, the doctrine "is not a limitation on [the courts'] power." *Rent-A-Ctr.*, 944 F.2d at 602. It is an "equitable doctrine that should not be applied if it would be unfair." *Id.* Application of the doctrine is discretionary. *Milgard*, 902 F.2d at 715.

Here, Judge Hernández's remand order did not explicitly foreclose plaintiff's arguments regarding subjective symptom testimony, and the assessments of the two state agency psychologists were never a part of the original case. Tr. 562-72. The remand order also called for a reassessment of plaintiff's RFC, which would require reevaluating all of the available evidence. While plaintiff does make reference to his original testimony, the evidence establishes that the ALJ did not have substantial evidence to reject plaintiff's subjective symptom testimony; therefore, declining to address such evidence would be unjust. *See Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991).

## II.  Subjective Symptom Testimony

Plaintiff alleges that the ALJ improperly discounted his subjective symptom testimony. Pl.'s Br. 10-17, ECF 13.

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms alleged, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that

the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). The ALJ need not "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). But Ninth Circuit law "plainly requires" that an ALJ do more than "offer[ ] non-specific conclusions that [the claimant's] testimony [is] inconsistent with [certain evidence]." *Id.* (citations omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

At his hearing on remand, plaintiff testified that because of both physical and mental issues, he stopped working in 2015. Tr. 520. Specifically, plaintiff testified that he had arthritis in his back, hip, and hands, mental problems made it difficult for him to deal with his supervisors, and physical pain impaired his ability to get up and down off the floor as well as climb stairs, which his construction work required. Tr. 520-21. Plaintiff further explained that he tried using vocational rehabilitation services, but they sent him out for jobs he could not do, so he stopped. Tr. 522. Plaintiff stated that he was sent out on janitorial jobs, which he physically could not do due to the pain he experienced having to get up and down off the floor, bend, twist, turn, and climb stairs, and he was sent out on jobs he was simply not qualified to do. Tr. 522-23. The pain he experienced also made it difficult for him to walk or stand for long periods, with pain starting after about half an hour. Tr. 524. Plaintiff testified that his back problems were caused by one leg being three-quarters of an inch shorter than the other. *Id*. When it came to physical exertion, plaintiff testified that carrying a normal can of paint up the stairs would leave him winded and in need of rest before continuing his work. Tr. 525.

Regarding his mental health, plaintiff testified that his mental impairments of anxiety and depression caused him to have conflicts with his supervisors. Tr. 527. Due to his ADHD, plaintiff had issues orienting himself to new tasks, often taking thirty minutes just to figure out where he was and what he was supposed to be doing. Tr. 527-28. He also testified that he sold his car and stopped driving because he was afraid of what he might do under the influence of road rage. Tr. 532.

When asked about his ability to do household chores or activities outside of the home, like grocery shopping, plaintiff testified that he was living in a shed in his friend's backyard and that while he tried to help as much as he could, such as by mowing the lawn, he had to stop after

short periods to rest. Tr. 531-32. As for shopping, he used an electric bicycle to get around, and avoided people at the grocery store by using self-checkout. Tr. 532.

A.  **Activities of Daily Living**

The ALJ found plaintiff's symptom testimony less persuasive because of his activities of daily living. Tr. 495. The ALJ observed that plaintiff could perform adequate self-care, prepare simple meals, do household chores, and go shopping. Tr. 495 (citing Tr. 189-97, 328-33). The ALJ also noted that plaintiff could walk for twenty miles, ride a bike, and advocate for himself regarding his medical needs, which the ALJ found to be a higher level of functioning than plaintiff alleged. Tr. 495 (citing Tr. 216, 223, 352, 448-49, 451).

While an ALJ may use activities of daily living to discount a plaintiff's subjective symptom testimony, those activities must create a contradiction in the plaintiff's testimony or meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cit. 2007). Here, the ALJ does not explain how plaintiff's activities are transferable to the workplace or how they contradict his testimony regarding his reported limitations. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (holding "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability").

Furthermore, it must be noted that plaintiff uses an electric bike rather than a non-motorized pedal bike. Tr. 548. And, as for the single instance of walking for twenty miles, plaintiff was disoriented and without food or water for two days while trying to find a mental hospital, thereby calling into question the veracity of his report. Tr. 352. Considering plaintiff's physical therapy records and that there are no other instances in the record of plaintiff walking

9 – OPINION AND ORDER

for anywhere near that distance or amount of time, there is no support for the ALJ's finding. Therefore, the ALJ erred in the assessment of plaintiff's activities of daily living.

### B. Objective Medical Evidence

The ALJ rejected plaintiff's subjective symptom testimony because it was inconsistent with the objective medical evidence. Tr. 495-98.

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

Notably, plaintiff received benefits in 2021 largely based on the same medical findings that are under review in this case. In the April 13, 2021 decision awarding benefits, ALJ Hobbs cited to x-ray images from September 2015 and a "repeat study performed in July 2019 [that] describes the degenerative changes to the claimant's left hip as unchanged when compared to the prior study[.]" Tr. 555. The ALJ observed that these "[x]-ray studies of the claimant's pelvis support his consistent complaints of chronic hip pain documented in his treatment notes and described in his hearing testimony." *Id*. The ALJ further noted that plaintiff saw Dr. James A.

Ryan in October 2019 "with complaints of left hip pain" that were "consistent with those made almost seven years earlier" in January 2013. *Id.* "Dr. Ryan also reviewed X-ray images of the pelvis obtained that day, which described degenerative changes to the bilateral hips consistent with the studies from September 2015 and July 2019, discussed above." *Id.*

ALJ Hobbs considered plaintiff's obesity in finding he was capable of only performing light work:

> Pursuant to SSR 19-2p, the undersigned considered the effect of the claimant's obesity on his ability to perform routine movement and necessary physical activity within the work environment. Similarly, the undersigned also considered how fatigue caused by the claimant's obesity impacts his physical and mental abilities to sustain work activity. The undersigned finds the likely aggravating effect of the claimant's obesity on his other impairments supports the modified light exertion residual functional capacity found in this decision.

Tr. 556. Because of plaintiff's advanced age, his ability to do only light work, his work experience, and his education level, ALJ Hobbs determined plaintiff was disabled since April 28, 2018. Tr. 557.

ALJ Hobbs observed that, when plaintiff saw Dr. Ryan in October 2019, his BMI was over 30. Tr. 556; *see* Tr. 991 (October 2019 records showing BMI of 30.07). Plaintiff's BMI was also over 30 in 2017—it was 30.17 in June 2017 (Tr. 920), 30.34 in July 2017 (Tr. 949), and 31.70 in October 2017 (Tr. 953)—when plaintiff was 58, i.e., also of advanced age. And plaintiff's BMI was extremely close to 30 before that—29.41 in January 2017 (Tr. 374), 29.32 in April 2017 (Tr. 377), and 29.19 in January 2016 (Tr. 357). "No specific weight or BMI establishes obesity as a severe impairment within the disability program." Social Security Ruling 19-2p. On remand, the ALJ will have an opportunity to consider whether plaintiff's obesity affects the determination as to whether he could perform light work and was disabled during the relevant period.

11 – OPINION AND ORDER

### III. Lay Witness Testimony

Lay witness testimony about a claimant's symptoms is competent evidence that an ALJ must consider unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (holding that competent lay witness testimony "*cannot* be disregarded without comment" (emphasis in original)).

The ALJ made note of two third-party statements, one by plaintiff's friend, C.S.[2], and another by plaintiff's counselor, Courtney Sevey of Oregon Vocational Rehabilitation Services ("VRS"). C.S. provided a third-party function report for plaintiff. Tr. 223- 28. In it, C.S. stated that plaintiff lives in a shed in his yard, and that he helps plaintiff get around and haul groceries that will not fit on his bike. Tr. 223. C.S. also stated that plaintiff has trouble with paperwork, his hip and short leg hinder his mobility, he gets agitated and paranoid without anti-depressants, he can walk only one block before needing a two-to-five minute rest, and he has trouble lifting, squatting, bending, standing, reaching, sitting, walking, kneeling, understanding, following instructions, getting along with others, and concentrating. Tr. 223, 228.

The ALJ only afforded "some weight" to C.S.'s lay witness testimony because he is "not a disinterested party." But C.S.'s "personal relationship with [plaintiff] is not a valid reason to discount his observations." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). "To do so "contradicts our insistence that, regardless of whether they are interested parties, friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to his or her condition." *Id*. (citation omitted); *see also Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) ("The fact that a lay witness is a family member cannot be a

---

[2] Plaintiff's friend's full name is not set forth in this decision to help preserve plaintiff's privacy.

ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value[.]"). The ALJ also discounted C.S.'s opinion because it is "inconsistent with some of the claimant's activities of daily living." Tr. 500. But the ALJ did not explain which activities of plaintiff's daily living are inconsistent with C.S.'s report. Furthermore, the ALJ did not explain how the weight he did give to C.S.'s testimony factored into plaintiff's RFC. As such, the ALJ failed to provide germane reasons for discounting C.S.'s lay witness testimony.

  Courtney Sevey of VRS opined that plaintiff would benefit from a job allowing him to "change positions as needed, sitting, standing and walking as needed to decrease pain symptoms." Tr. 293. She also believed plaintiff had functional limitations in self-direction and interpersonal skills, making it difficult for him to get along with others, and observed that "he has multiple job losses for aggressive acting out." Tr. 294. She opined that plaintiff would do well in a position "with independent and structured duties with supportive and firm supervision on site." *Id*. She noted that plaintiff has an inability to interact in a socially acceptable manner, an inability to self-direct, would need monitoring onsite to prevent accident, injury, or theft at work due to inability to monitor himself, and would benefit from specialized training as well as placement. Tr. 295-98. Finally, she observed that plaintiff should also avoid uneven terrain, wet surfaces, and climbing ladders. Tr. 293.

  As with C.S.'s opinion, the ALJ gave Sevey's opinion "some weight." Tr. 500. But, also like C.S.'s opinion, the ALJ did not provide any reasoning for discounting Sevey's opinion. While the ALJ did give "some weight to the . . . observations concerning the claimant's functional limitations with respect to lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and climbing stairs, as well as understanding, concentrating, and following

instructions," nothing explains why the ALJ gave Sevey's opinion "some weight."[3] Tr. 500. It is also unclear where weight was given and to which parts of Sevey's opinion. As a result, the ALJ has once again failed to provide a reason germane to Sevey to discount her opinion.

## IV. RFC

Plaintiff argues the ALJ failed to include in his RFC all of plaintiff's physical and mental limitations as was required upon remand. Pl.'s Br. 4-8, ECF 10 (citing Tr. 472, 478, 498, 568).

The Commissioner concedes "[t]he ALJ did not specifically address the opinion of Peter LeBray, Ph.D., that Plaintiff should not perform speeded, fine fingering, as ordered by the Court." Def.'s Br. & Mot. Remand 3, ECF 16. Indeed, inexplicably, the ALJ failed to address Dr. LeBray's opinion that plaintiff should not perform "speeded, fine fingering," which Judge Hernández previously found was error and was not harmless. Tr. 568.

Regarding plaintiff's mental limitations, the RFC from the 2018 decision includes a limitation that plaintiff "can understand and carry out simple instructions." Tr. 20. Judge Hernández found "[t]he ALJ's failure to include her determination that Plaintiff has moderate limitations in concentration, persistence, or maintaining pace in the RFC, without explanation, is . . . error." Tr. 569. The RFC from the 2022 decision contains the same language—that plaintiff "can understand and carry out simple instructions." Tr. 493. Again, inexplicably, the ALJ did not correct the error that Judge Hernández previously found was not harmless.

## V. Remedy

When a court determines the Commissioner erred in some respect in making a decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler v. Commissioner of Social Sec. Admin.*,

---

[3] The Commissioner concedes this issue. Def.'s Br. & Mot. Remand 3, ECF 16.

14 – OPINION AND ORDER

775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. Even if all of the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id*. at 1021.

Here, the first requisite of the *Garrison* test is met. However, the record "does not compel a finding of disability." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1107 (9th Cir. 2014). There are a number of errors that the ALJ must resolve, as set forth above. "Given the conflicts and ambiguity that remain in the record," the case is remanded for further proceedings rather than for an award of benefits. *Id.*

## ORDER

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this decision.

DATED September 29, 2023.

        /s/ Youlee Yim You
        Youlee Yim You
        United States Magistrate Judge